# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

CLARK A. HOUSTON,

    Plaintiff,

v.                                    CV 214-119

ELAN FINANCIAL SERVICES,

    Defendant.

## ORDER

    Plaintiff Clark A. Houston ("Houston") wants to have his cake and eat it too. Content to pay his credit card bill from his personal bank account when his company was solvent, Houston suddenly reneged when his financial fortune changed, swearing that he cannot be held individually liable for debt in the name of his now-defunct company. Alleging that Defendant Elan Financial Services ("Elan") perpetrated harassment and fraud, Houston seeks damages in the amount of $5,000,000.000. For its part, Elan seeks to hold Houston personally liable for the outstanding debt.

    Elan now moves for Summary Judgment. In its Motion, Elan avers that the parties entered into an enforceable contract when Houston accepted the Card Member Agreement, the terms of which

clearly hold an individual liable for an outstanding line of business credit. In light of the undisputed facts of this case, the Court **GRANTS** Elan's Motion for Summary Judgment (Dkt. No. 17) for the reasons set forth below.

**FACTUAL BACKGROUND**

Houston is a licensed Georgia contractor, specializing in electric and industrial work, for both residential and commercial property. Dkt. No. 17-3 ("Houston Dep."), 16:21-25. From 1984 to 2003, Houston owned a company, Houston Construction. Id. at 17:12-14. Houston sought legal advice for his company after he secured a large contract for a project in 2003. Id. at 17:14-17. Acting upon the advice of an attorney, Houston incorporated his new company, becoming the president of Houston Electric, Inc. ("Houston Electric"). Id. at 17:15-17, 25:13-15.

Initially, Houston Electric proved a great success; Houston's company "made plenty of money . . . [and] everything was fine." Id. at 18:1-3. In late 2009 or early 2010, Houston Electric received a written offer from United Community Banks, Inc. to apply for a line of business credit. Id. at 25:24-26:8.[1] Houston called Elan when he was unable to successfully apply for the credit card online, and he identified himself to the representative as "Clark Houston," the "business owner" of

---

[1] Elan is the "creditor, issuer and service provider" of the United Community Banks, Inc. business credit card. Dkt. No. 17-6, p. 1.

Houston Electric.  Id. at 28:24-29:10.  During that phone call, the representative obtained Houston Electric's: gross annual income (id. at 35:24-36:2), Federal Tax Identification Number (id. at 37:14), business address (id. at 29:23-24), as well as Houston's personal address (id. at 37:23-24).

Upon completion of the credit card application, the representative relayed the following liability terms from the Card Member Agreement:

> Mr. Houston, the business owner, and each individual employee applicant understand and agree that the business, the business owner, and the individual employees will be liable for charges to the account as follows: One, the business is jointly and severally liable with each individual employee as to that individual employee's charges.  Two, the business owner and each individual employee is individually liable as to their respective individual charges.  And three, the business owner is individually liable and jointly liable with the business for all charges made to the account. . . . Use of the card or account will signify acceptance of the terms of the Card Member Agreement.

Id. at 41:20-42:25.  Following the recitation of liability, Houston stated that he understood the terms, confirmed that he would be the only individual with access to the card, and verbally provided his assent for the representative to complete his application.  Id. at 43:1-11.  The representative then informed him that he would receive his credit card and Card

Member Agreement in the mail within seven to ten business days. Id. at 43:1-11.

On or about February 11, 2010, Elan approved Houston Electric's credit application, establishing a line of business credit with a limit of $3,000.00. Dkt. No. 17-4 ("Johnson Decl."), p. 3; Dkt. No. 17-6, ¶ 1. Shortly thereafter, Houston received the credit card and the Card Member Agreement, but he did not read the agreement because he threw it in the trash. Houston Dep., 47:18-29, 48:4-5; see also Dkt. No. 17-7 ("Card Member Agreement"), p. 4. Houston began to use the credit card within a month of its receipt, purchasing "a lot of things with it." Houston Dep., 47:18-20, 60:10, 81:18-20. Elan sent Houston Electric monthly statements beginning in February 2010, which Houston paid from his personal bank account. Dkt. No. 17-8, p. 75; Houston Dep., 66:13-16, 67:1-7.

Unfortunately, Houston Electric's financial circumstances changed for the worse when a large contract fell through, and Houston "drained" his personal bank account in an attempt to keep his company afloat. Houston Dep., 18:4-9, 19:1-2. Houston was unable to pay his bills or find work for his company, further compounding his financial woes. Id. at 18:24-19:2. In the midst of this crisis, Houston attempted to repay Houston Electric's debts by "selling everything that [he] had left" and offering his creditors "money for a settlement." Id. at 19:3-

13. The full balance on the Elan credit card, however, was never paid by either Houston or Houston Electric. Johnson Decl., p. 3; Houston Dep., 52:23. In accordance with the terms of the Card Member Agreement, Elan reported factually accurate information regarding the status of the account to the credit bureau. Card Member Agreement, p. 4.[2] Following numerous attempts to collect payment from either Houston or Houston Electric, on May 14, 2012, Elan sold its right to collect Houston Electric's debt to CACH, LLC. Johnson Decl., p. 4; Card Member Agreement, p. 4.[3] At the time of the sale, Houston Electric's debt was $3,799.17, including the bank's legally chargeable interest. Johnson Decl., p. 4.

---

[2] The applicable section from the Card Member Agreement reads as follows:
> 30. Collecting Credit Information About you – You authorize us to make any credit, employment and investigative inquiries we feel are appropriate related to giving you credit or collecting amounts owed on your Account. You agree that a consumer credit report or business bureau file report, as applicable, may be requested periodically from one or more credit reporting agencies (credit bureaus) and used in connection with your application and any update, renewal or extension of credit. We may provide information about you, your Account or your credit history to credit reporting agencies and others who may properly receive that information.

Card Member Agreement, p. 4.

[3] The relevant provision from the Card Member Agreement, authorizing Elan to assign an account to another creditor, reads as follows:
> 29. Assignment of your Account to Another Creditor – We may assign, sell or transfer your Account and amounts owed by you to another creditor at any time. If we do this, the Agreement will still be in effect unless and until amended, and any references made in this Agreement to "we", "us", "our", or "the issuer" will refer to the creditor to which we assigned, sold, or transferred the Account or amounts owed under the Account.

Card Member Agreement, p. 4.

## PROCEDURAL BACKGROUND

Initially, Houston, proceeding pro se, filed an action against Equifax/Elan and All Associated [sic], on February 16, 2012, in the McIntosh County Superior Court. Dkt. No. 1-1, p. 2. On February 6, 2014, McIntosh County Superior Court issued an order dismissing all of Houston's claims with prejudice against Equifax Information Services, LLC. Id. at p. 50. On August 27, 2014, Houston reasserted his fraud, harassment, and wrongful collection claims against Elan, requesting that the court award him a sum of $5,000,000.00 as damages. Id. at p. 91-93. Elan removed the action to this Court on August 8, 2014. Dkt. No. 3. Elan filed the instant motion for summary judgment on January 23, 2015, (Dkt. No. 17), to which Houston has filed a Reply to Notice (Dkt. No. 19, 22).

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict

for the nonmoving party." Id. In making this determination, the Court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based

7

AO 72A
(Rev. 8/82)

on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

### I. Houston Is Liable for Houston Electric's Credit Card Debt

Houston sets forth three arguments as to why he cannot be held responsible for Houston Electric's debt: (1) that he never signed as a guarantor of the debt; (2) that Elan illegally provided information regarding Houston to various credit reporting agencies; and (3) that Elan fraudulently modified his account, holding him personally liable for debt when the account was originally established in Houston Electric's name. Houston, however, misunderstands the law.

As an initial matter, a creditor does not need to present a debtor with his signature on a credit card application to prove the existence of credit card debt. A creditor can prove the existence of credit card debt by presenting the Court with the following evidence: (1) that it issued a credit card to the debtor; (2) that the debtor agreed to be bound by the terms of the credit card agreement if he used the card; (3) that the debtor received monthly statements that were not returned to the creditor; and (4) that the debtor failed to pay the outstanding

balance. Davis v. Discover Bank, 627 S.E.2d 819, 819-21 (Ga. Ct. App. 2006). As in Davis, Elan presented the Court with the following undisputed evidence: (1) the letter approving Houston Electric's application for a credit card (Dkt. No. 17-6); (2) the Card Member Agreement (Dkt. No. 17-7); (3) a record of the monthly statements that were mailed to Houston Electric (Dkt. No. 17-8, pp. 1-77); (4) Houston's acknowledgement that he received the aforementioned monthly statements (Houston Dep., 66:13-15); and (5) sworn statements that Houston failed to pay his outstanding balance (Decl. James Johnson, p. 3; Houston Dep., 52:53). On the basis of these undisputed facts, it is thus clear that there is an outstanding debt and that Houston is responsible for that debt.

An individual can be held personally responsible for a line of business credit if he consents to be bound by the terms of the Card Member Agreement. An individual's receipt of a credit card amounts to a "mere offer" from the credit card company—an offer that the individual must accept or reject. Read v. Gulf Oil Corp., 150 S.E.2d 319, 320 (Ga. Ct. App. 1966)(explaining that an individual can accept an offer by retaining the card and making purchases with it or reject an offer by choosing not to use it and returning it). Acceptance of the credit card constitutes "a formal and binding contract" between the parties. See id. Houston's mere use of the credit card thus signified

two major concessions: (1) that he accepted and agreed to the terms of Elan's Card Member Agreement; and (2) that he consented to the entry of a formal and binding contract between himself and Elan.

When evaluating a contract between parties, basic principles of contract interpretation apply. See Jones v. Barnes, 318 S.E.2d 164, 166 (Ga. Ct. App. 1984) (explaining that "[i]f the terms used in a contract are plain, unambiguous, and capable of only one reasonable interpretation, then they must be given their ordinary significance"). The terms of the Card Member Agreement clearly set forth Houston's liability for Houston Electric's debt. The relevant provision of the Card Member Agreement, clause twenty-one, states as follows:

> You are individually liable and you and your employer (which includes the individuals or co-obligor(s) who executed the application for credit) are jointly liable for all charges to the Account, including, without limitation, all fees and **INTEREST CHARGES**. In addition, if you are the individual or co-obligor who executed the application for credit, you are individually liable and jointly liable with the Company for all charges to the Account for your use of the Accounting, including, without limitation, all fees and **INTEREST CHARGES**. You are responsible and agree to pay for all charges in connection with your use of the Card and Account regardless of whether you have been reimbursed by your Employer.

Card Member Agreement, p. 4. The Card Member Agreement could not be more clear: the credit card applicant—here, Houston—is

*individually* liable to pay for *all* charges associated with the account. Houston's claim that Elan fraudulently pursued him to pay for Houston Electric's debt fails as a matter of law. Elan expressly reserved the right to hold Houston personally liable for his business debt. Id. at p. 4. That Elan chose to exercise its right to seek repayment from an individual applicant, as opposed to the company, does not render its actions fraudulent.

Houston's final claim—that Elan illegally reported information regarding his credit to credit reporting agencies—lacks merit and must fail as a matter of law. Clause thirty of the Card Member Agreement clearly states that Elan can provide current information regarding an individual's account status or credit history to credit reporting agencies. See supra note 2. Given that Houston expressly provided his consent for Elan to report information regarding his account to credit bureaus, he cannot now claim that Elan is perpetrating a fraud. Notwithstanding the above, the Court will not disturb the terms of the Card Member Agreement when the meaning of the terms of that agreement can be clearly construed from the text of the document. In light of such an unambiguous contract, Houston's claim that he cannot be held liable for Houston Electric's debt fails as a matter of law.

## II. Elan Did Not Defame Houston when it Reported Accurate Information to the Credit Bureau

In his complaint, Houston sets forth a defamation claim, regarding Elan's act of "presenting or publishing false information" about him to the credit reporting agencies. Dkt. No. 9, p. 2. To succeed on a claim of defamation, Houston must show:

> that the defendant made a false and defamatory statement concerning the plaintiff; that the defendant made an unprivileged communication of that statement to a third party; fault by the defendant constituting at least negligence; and either that the plaintiff suffered special harm or that the statement is actionable even in the absence of special harm.

Wylie v. Denton, 746 S.E. 2d 689, 696 (Ga. Ct. App. 2013) (citing Renton v. Watson, 739 S.E.2d 19 (Ga. Ct. App. 2013). As discussed supra, when Houston entered into the contract with Elan, he consented to Clause Thirty of the Card Member Agreement. See supra note 2. Elan expressly reserved the right to report accurate information regarding Houston's account status and credit history to credit bureaus. Id. A truthful disclosure about the status of Houston's account or credit history cannot qualify as defamation, regardless of the unsavory contents in the report. See Wylie, 746 S.E.2d at 696.

## III. Houston's Claims of Harassment and Wrongful Collection Lack Evidentiary Support

Houston failed to support his allegations of harassment and wrongful collection with evidence that would allow this Court to provide him with his requested relief. In his complaint, Houston alleges "harassment, Wrongful Collections" [sic]. Dkt. No. 9, p. 3. The Court interprets Houston's pro se complaint liberally as it "is held to less stringent standards than formal pleadings drafted by a lawyer." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Accordingly, the Court construes Houston's complaint as an attempt to state a claim pursuant to the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.A. § 1692(d) (2015).[4] "Wrongful Collection" is a layman's term, which

---

[4] 15 U.S.C. 1692(d) reads as follows:
> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person; (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader; (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681(a)(f) or 1681(b)(3) of this title; (4) the advertisement for sale of any debt to coerce payment of the debt; (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number; (6) Except as provided in section 1692(b) of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

encompasses the prohibited conduct of a debt collector. <u>Id.</u> at § 1692(d)(1)-(6).

Houston's claim of harassment pursuant to the FDCPA fails. The record is devoid of any details of Elan's alleged predatory behavior. Indeed, Houston's various filings fail to address specifics of the alleged harassment—none of his pleadings explain how, where, or when Elan committed these acts. <u>See, e.g.</u>, Dkt. No. 9, Dkt. No. 14, Dkt. No. 19. Even construed liberally, a mere statement that Houston suffered "mental anguish, anxiety, grief, shock, humiliation, and mental suffering," (Dkt. No. 9, p. 3), does not warrant granting Houston's requested relief. <u>Johnson</u>, 234 F.3d at 507.

Houston's final claim of wrongful collection in violation of 15 U.S.C. §1692(d) similarly lacks evidentiary support for the reasons set forth above. Six different types of actions qualify as a prohibited behavior for a debt collector. 15 U.S.C. 1692(d)(1)-(6). Although Houston states that he has been subject to a "constant barrage of harassment and threats," (Dkt. No. 9, p. 3), he fails to provide the Court with evidence of these alleged acts. Without more, the dearth of detail is a death knell for his claims.

## CONCLUSION

No matter how he tries to slice it, Houston is liable for Houston Electric's outstanding line of business credit. Elan's

Motion for Summary Judgment (Dkt. No. 17) must, therefore, be **GRANTED** in its entirety. The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to close this case.

**SO ORDERED**, this 24TH day of September, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA